UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 503 S. 44th Street Philadelphia, PA 19104

Address of Defendant: _____ 3451 Walnut Street Philadelphia, PA 19104

Place of Accident, Incident or Transaction: _____ Address of Defendant

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 3/19/21   _____   _____
   *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.   *Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.   *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____   _____   _____
   *Sign here if applicable*
   *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 503 S. 44th Street Philadelphia, PA 19104 _____

Address of Defendant: _____ 3451 Walnut Street Philadelphia, PA 19104 _____

Place of Accident, Incident or Transaction: _____ Address of Defendant _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

| | | | |
|---|---|---|---|
| 1. | Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 2. | Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 3. | Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? | Yes ☐ | No ☑ |
| 4. | Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? | Yes ☐ | No ☑ |

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 3/19/21 _____  _____  _____
                          *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
     *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
     *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

- ☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

- ☐ Relief other than monetary damages is sought.

DATE: _____  _____  _____
                          *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Clay Contee

## DEFENDANTS

University of Pennsylvania

**(b)** County of Residence of First Listed Plaintiff    Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*   215 563 7776
Faye Riva Cohen
Law office of Faye Riva Cohen
2047 Locust Street Philadelphia, PA 19103

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                             *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☒ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| | | | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Americans with Disabilities Act, 42 U.S.C. 1201

Brief description of cause:
Plaintiff was removed from Defendant as an employee and student in violation of the ADA after they failed to accomodate his disabilities.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

JS 44 Reverse (Rev. 10/20)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. **(See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## IN THE UNITED STATES DISTRICT COURT
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Clay Contee | : | |
|    Plaintiff, | : | |
| | : | |
|     v. | : | Case No.: |
| | : | |
| University of Pennsylvania, | : | |
|    Defendant. | : | |

## COMPLAINT

Plaintiff Clay Contee (hereinafter "Plaintiff"), hereby files this Complaint against Defendant University of Pennsylvania (hereinafter "Defendant"), alleging that his rights, pursuant to the Americans with Disabilities Act ("ADA"), and its 2008 amendments, 42 U.S.C. § 12101 *et seq.*, have been violated, and avers as follows:

## PARTIES

1. Plaintiff is a resident of Philadelphia, PA with an address of 503 S. 44th Street, Philadelphia, PA 19104, and he has a disability.

2. Defendant is an institution that is incorporated in Pennsylvania and provides services in the City of Philadelphia, Pennsylvania, and has an address of 3451 Walnut Street, Philadelphia, PA 19104.

3. At all times hereto, Defendant employed managers, supervisors, agents and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's education. In making said decisions, these individuals engaged in the practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

4. At all times hereto, Defendant employed managers, supervisors, agents and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment which forms the basis of the Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

5. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

6. Subject-Matter Jurisdiction is conferred upon this Honorable Court by 28 U.S.C. § 1337 relating to "any civil action or proceeding arising out of any act of Congress regulating commerce," 28 U.S.C. § 1343(4), and 28 U.S.C. § 1331, and under the Americans with Disability Act and its Amendments ("ADA") 42 U.S.C. § 12101 *et seq.*

7. This Court may properly maintain Personal Jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with the traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

8. Venue is appropriately laid in the United States District Court for the Eastern District of Pennsylvania inasmuch as all parties regularly conduct business within this District and the acts complained of by Plaintiff arose herein.

9. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about October 28, 2020. The EEOC issued a Right to Sue on December 30, 2020 ("Exhibit A"). This Complaint is being filed within ninety (90) days of Plaintiff's receipt of the Right to Sue.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

10. Plaintiff hereby incorporates the prior paragraphs of this Complaint as though fully set forth at length.

11. Plaintiff exhausted his administrative remedies, as required under federal and state law.

12. Specifically, he filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about October 28, 2020.

13. On or about December 30, 2020 the EEOC issued a Right to Sue.

14. Plaintiff had a parallel proceeding with the Office of Civil Rights ("OCR") and on or about February 23, 2021 the OCR denied Plaintiff's claim and gave permission to file a civil action (attached hereto as Exhibit "B").

## **FACTS**

15. Plaintiff hereby incorporates the prior paragraphs of this Complaint as though fully set forth at length.

16. In January 2018, Plaintiff was accepted as a student in Defendant's graduate program ("Program") of the Department of Physics and Astronomy.

17. In June 2018, Plaintiff began working for Defendant and receiving payments.

18. Plaintiff suffers from a variety of mental health disabilities ("Disabilities") that include major depressive disorder, anxiety, attention deficit hyperactivity disorder, adjustment disorder, and suicidal ideation.

2

19. In order to treat his Disabilities, Plaintiff is, or has been, prescribed lithium, desvenlafaxine, propranolol, doxepin, zaleplon, atomoxetine, and vyvanse. These medications have side effects which include drowsiness and inability to concentrate. Attached hereto as Exhibit "C" are March 7, 2019 and January 24, 2020 letters from his psychiatrist Dr. Louis Littman, and a March 18, 2019 letter from Dr. Cory F. Newman (Professor of Psychology at Penn Medicine) detailing his Disabilities.

20. In or about the summer of 2018, after Plaintiff began working for Defendant, he approached Defendant's Counseling and Psychological Services ("CAPS"). During that summer Plaintiff, through CAPS, saw Dr. Marilia Marien, a staff psychologist, and was then referred to the Center for Cognitive Therapy and the Center for the Treatment and Study of Anxiety at Defendant's hospital, and, through these resources, he became acquainted with Dr. Newman and Dr. Lily Brown.

21. Plaintiff had monthly check-ins with Bailey Frankel, a CAPS Case Manager and Clinical Social Worker, throughout his first year at Defendant.

22. Due to the above, it is clear that even before he took his first class at Defendant, Defendant had knowledge of Plaintiff's mental health issues.

23. In September 2018 Plaintiff started classes as a student in Defendant's Program.

24. In or about September and October 2018 Plaintiff corresponded with Defendant about his Disabilities (attached hereto as Exhibit "D", emails between Plaintiff and Defendant reflecting the aforesaid correspondence); therefore, even if Defendant was unaware of Plaintiff's mental health issues in the summer of 2018, it ultimately was aware of them in or about October 2018.

25. In or about December 2018 Plaintiff completed his first semester at Defendant with a grade point average ("GPA") of 1.67.

26. Due to his low GPA, Professor Joshua Klein ("Prof. Klein") wrote Plaintiff a letter dated January 7, 2019 (attached hereto as Exhibit "E") informing Plaintiff that he was no longer a student in good standing and would have to leave the Program by May 2019.

27. About three (3) weeks after Plaintiff's receipt of the January 7, 2019 letter, he arranged to meet with Prof. Klein and Associate Ombudsman Marcia Martinez Helfman.

28. At his meeting with Prof. Klein and Ms. Helfman, Plaintiff argued for a probationary period as he asserted that his GPA was not truly reflective of his academic aptitude, but was greatly reduced by his limitations due to his Disabilities. The probationary period is guaranteed by Penn's policy, and should have been offered to Plaintiff instead of him having to fight for it.

29. At the conclusion of the meeting, it was agreed that Plaintiff would be granted a probationary period with various academic thresholds he would have to meet to stay in

the Program and return him to good academic standing (see the letter attached hereto as Exhibit "F").

30. In or about March 2019 Plaintiff began to be concerned that his Disabilities would impede his ability to meet his agreed-upon academic thresholds and prevent him from achieving an academic good standing; accordingly, he reached out to the Office of University Life which advised him to utilize CAPS, which, in turn, referred him to Student Disability Services.

31. It was also suggested he apply for medical leave, which he ultimately did on or about April 14, 2019 (see the email chain attached hereto as Exhibit "G").

32. In support of Plaintiff's request for medical leave, Dr. Littman and Dr. Newman provided him with letters detailing his Disabilities (see Exhibit "C").

33. Plaintiff approached Professor Klein about taking medical leave, which initially, Prof. Klein appeared to agree to. However, Plaintiff expressed that he only wanted to take a short medical leave of roughly three (3) weeks so that he could continue in the Program without substantial interruption, and still be able to participate in his summer Teaching Assistantship ("TA'ship"). Upon hearing that Plaintiff wanted a short medical leave and not a longer one, Professor Klein openly doubted Plaintiff's need to take leave and accused him of acting in bad faith. He threatened to refuse to extend Plaintiff's departmental funding, which included his summer TA'ship if he took a short medical leave and missed his Final Exams.

34. Prof. Klein's decision to make Plaintiff take the Finals completely disregarded Plaintiff's academic difficulties brought on by his Disabilities and the letters from his mental health professionals; Plaintiff ultimately chose not to take medical leave, and take the Finals as scheduled out of fear of retaliation.

35. Considering Plaintiff's probationary status, Prof. Klein knew or should have known that Plaintiff would have difficulty securing a faculty sponsor to fund him (students in the Program are not permitted to be self-funded); consequently, Prof. Klein's denial of departmental funding would result in Plaintiff's dismissal from the Program by default.

36. In or about late April 2019, Plaintiff took the Finals as scheduled. He performed poorly, which substantially impacted his GPA. Ultimately, Plaintiff finished the Spring 2019 semester with a GPA of 3.0, which was below the agreed-upon threshold for Plaintiff's probationary period.

37. Although Plaintiff's Spring 2019 academic performance was below the agreed- upon threshold, it was still mathematically possible for him to meet the overall GPA requirement by the end of the Fall 2019 semester; accordingly, in response to Plaintiff's academic performance in Spring 2019, Prof. Klein issued him a letter dated May 31, 2019 (see the letter attached hereto as Exhibit "H") allowing him to remain in the Program for the Summer and Fall 2019 semesters provided some additional thresholds

4

were met. Said thresholds, however, would have required Plaintiff to obtain Straight A's the next semester, which is an exceedingly difficult feat for a graduate school student. Professor Klein insisted that he could not push back the deadline for Plaintiff to meet to the GPA requirement to account for Plaintiff's difficulties in the spring 2019 semester, however there was not indication that he could not do so.

38. Unfortunately, Plaintiff could not meet the requirements of the Program, and was dismissed from the Program on January 2, 2020 (see the letter attached hereto as Exhibit "I"). Plaintiff's GPA improved each semester, and he still met the 3.0 minimum GPA for good standing two out of the three semesters.  In his last semester he received a 3.23, which was a notable improvement.

39. On or about April 28, 2020, Plaintiff appealed his dismissal to the Dean of the Graduate School of Arts and Science, Beth S. Wenger.  Dr. Wenger denied his appeal.

40. Due to his Disabilities, and the medications he takes for the same, as described above, Plaintiff is unable to perform tasks and meet basic deadlines in a timely and efficient manner.

41. Plaintiff informed Defendant of his Disabilities long before they were manifested in poor academic performances.

42. While Prof. Klein should have known of Plaintiff's Disabilities in Fall, 2018, he certainly knew of them by or about January 2019.

43. Despite knowledge of his Disabilities, and their effect on Plaintiff's academic performance, Defendant in general, and Prof. Klein in particular, knowingly required Plaintiff to perform to academic standards that were not possible given his Disabilities; indeed, Prof. Klein went so far as to degrade and insult Plaintiff's need for medical leave as somehow being illegitimate and threatened to revoke his funding, which caused Plaintiff to stop pursuing medical leave and take the Final exams.

44. Plaintiff was discriminated against on the basis of his Disabilities: the thresholds established for him did not adequately account for the effects his Disabilities had on his academic performance, and being forced to complete the Finals, and basing new thresholds on his performance on them disregarded his Disabilities.

45. Defendant did not offer, in good faith, any accommodation to Plaintiff that could address his limitations due to his Disabilities.

46. As a result of this discrimination, Plaintiff lost his stipend with Defendant, which was his primary source of income. This discrimination has also caused Plaintiff to experience severe emotional pain and suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary loss.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra.*

## COUNT I
### DISCRIMINATION VIOLATION of the AMERICANS WITH DISABILITIES ACTS, 42 U.S.C. § 12101 *et seq.*

47. Plaintiff hereby incorporates the prior paragraphs of this Complaint as though fully set forth at length.

48. Plaintiff is an individual with a qualified disability.

49. Based on the foregoing, Plaintiff alleges that Defendant violated the ADA by subjecting him to discrimination on the basis of his actual and/or perceived disabilities and/or records of impairment.

50. Defendant was aware of Plaintiff's disabilities prior to him entering the academic program, and early in his enrollment in the program. Yet, Defendant failed to engage in the interactive process with Plaintiff, and failed to discuss or provide reasonable accommodations for his Disabilities.

51. Defendant held Plaintiff to a standard that he could not meet based on his Disabilities, and then released him from the Program when he failed to meet it.

52. Defendant's conduct caused Plaintiff to experience severe emotional pain and suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary loss.

Plaintiff prays that Defendant be required to provide all appropriate remedies available under the ADA.

## COUNT II
### RETALIATION VIOLATION OF AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 *et seq.*

53. Plaintiff hereby incorporates the prior paragraphs of this Complaint as though fully set forth at length.

54. Plaintiff is an individual with a qualified disability.

55. Defendant subjected Plaintiff to retaliation for requesting accommodation and medical leave when they forced him to take Final Exams in Spring, 2019, and pressured him into not taking the medical leave he had requested, both of which were to Plaintiff's academic detriment.

56. Defendant took these actions despite knowing that Plaintiff was suffering from disabilities, and then terminated him from the program for failing to meet their grade

requirements.

57. As a result of Defendant's retaliatory actions, Plaintiff was prevented from pursuing his doctoral degree, loss of employment, and has experienced severe emotional pain and suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary loss.

Plaintiff prays that Defendant be required to provide all appropriate remedies available under the ADA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court grant him the following relief against Defendant:

(a)    Compensatory damages;

(b)    Punitive damages (where applicable);

(c)    Liquidated damages (where applicable);

(d)    Emotional pain and suffering;

(e)    Reasonable attorneys' fees;

(f)    Recoverable costs;

(g)    Pre and post judgment interest;

(h)    An allowance to compensate for negative tax consequences;

(i)    Readmittance to the Program.

Respectfully Submitted,

BY: _____

LAW OFFICE OF FAYE RIVA COHEN, P. C.
FAYE RIVA COHEN, ESQUIRE
Attorney ID: 18839
2047 Locust Street
Philadelphia, PA 19103
Attorney for Plaintiff

Date: _March 19, 2021_

## VERIFICATION

I, Clay Contee, hereby verify that I am Plaintiff in the within Complaint and that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

I understand that false statements are made to the penalties of 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

_____
Clay Contee
Plaintiff

Date: _3/19/21_

# EXHIBIT A

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  **Clay Contee**<br>**503 S. 44th Street**<br>**Philadelphia, PA 19104** | From:  **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1000**<br>**Philadelphia, PA 19107** |

☐  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2021-00423** | **Legal Unit,**<br>**Legal Technician** | **(267) 589-9700** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒  Other *(briefly state)*        **No Jurisdiction - No employee/employer relationship.**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Jamie R. Williamson*

**December 30, 2020**

Enclosures(s)

**Jamie R. Williamson,**
**District Director**

*(Date Mailed)*

cc:   **UNIVERSITY OF PENNSYLVANIA**
**Helen Logan (for Respondent)**
**Sr. Admin of Legal Services**
**2929 Walnut Street, Suite 400**
**Philadelphia, PA 19104**

**James W. Cushing, Esq. (for Charging Party)**
**LAW OFFICES OF FAYE RIVA COHEN, P.C.**
**2047 Locust Street**
**Philadelphia, PA 19103**

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**</u>

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:  Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# EXHIBIT B



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS

400 MARYLAND AVENUE, SW
WASHINGTON, DC 20202-1475

REGION XI
NORTH CAROLINA
SOUTH CAROLINA
VIRGINIA
WASHINGTON, DC

February 23, 2021

Mr. Clay Contee
503 South 44th Street
Philadelphia, Pa 19104
clay.contee@gmail.com

Re:  Appeal for OCR Case #03-20-2321

Dear Mr. Contee:

This is in response to your December 2, 2020 appeal to the Office for Civil Rights (OCR) in the U.S. Department of Education regarding the letter issued on October 14, 2020 by the Philadelphia Office for the above-referenced complaint against the University of Pennsylvania (the University).

After careful consideration, I find that the issues raised in your appeal do not warrant a change in the disposition of your case under the laws and regulations enforced by OCR.  Accordingly, your appeal is denied.

This concludes OCR's consideration of your appeal and is the final agency determination.  Final agency determinations and regional office determinations are not formal statements of OCR policy and should not be relied upon, cited, or construed as such.  OCR's formal policy statements are approved by a duly authorized OCR official and are made available to the public.

You have now exhausted all avenues of review within the U.S. Department of Education.  You may have the right to file a private suit in federal court whether or not OCR finds a violation.

Sincerely,

*Alice B. Wender*

Alice B. Wender
Director
District of Columbia Office
Office for Civil Rights

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

*www.ed.gov*

# EXHIBIT C

**Louis Littman, MD, PhD**
**1420 Walnut Street, Suite 902**
**Philadelphia, PA 19102**
**Pennsylvania Medical License Number: MD417898**
**NPI: 1790906733**
**Phone: 215-735-4888   Cell Phone: 215-906-5981   Fax: 215-735-2020**

March 7, 2019

To Whom it May Concern:

I am writing this letter at the request of my patient, Mr. Clay Contee (DOB: 01/15/1990).
He started treatment with me on 1/23/19 for his medical conditions. These conditions
interfered with his ability to successfully achieve his full academic potential last
semester. We are attempting to ameliorate the conditions but this may take some time. I
understand that Mr. Contee is currently on academic probation. If there is any way to
give consideration to his medical conditions and give extra time to allow full treatment of
the conditions that would be appreciated.

Thank you for your attention to this matter. Please contact me if you need any additional
information.

Sincerely,

Louis Littman, MD, PhD

**Louis Littman, MD, PhD**
**1420 Walnut Street, Suite 902**
**Philadelphia, PA 19102**
**Pennsylvania Medical License Number: MD417898**
**NPI: 1790906733**
**Phone: 215-735-4888   Cell Phone: 215-906-5981   Fax: 215-735-2020**

January 24, 2020

To Whom It May Concern:

I am writing this letter at the request of my patient, Mr. Clay Contee (DOB: 01/15/1990).
He has been my patient since 01/23/2019. He has had severe Major Depressive Disorder
(F33.9), Anxiety (F41.9), Attention Deficit Hyperactivity Disorder (F90.9), and
Adjustment Disorder (F43.20). He has received both medication management and
medical psychotherapy for stabilizing his conditions.

He is currently prescribed: lithium carbonate 300 mg, desvenlafaxine 100 mg,
propranolol 20 mg (up to three times a day as needed for anxiety), doxepin 10 mg for
sleep, zaleplon 10 mg for slep as needed and methylphenidate 5-10 mg as needed. He is
also on several medications that we will be weaning off due to cost (from change in
insurance coverage) including: atomoxetine 80 mg and vyvanse 40 mg.

Thank you for your attention to this matter. Please contact me if you need any additional
information.

Sincerely,

Louis Littman, MD, PhD

Scanned with Cam

 **Penn Medicine**

**Center for Cognitive Therapy**

Department of Psychiatry

Cory F. Newman, Ph.D., ABPP
Professor of Psychology in Psychiatry

March 18, 2019

To Whom It May Concern:

I am writing this letter with regard to Clay Contee, who sought treatment at the Center for Cognitive Therapy on 8/27/18 and who was diagnosed with a severe, persistent depressive disorder. I have been treating him on an outpatient since that time, having seen him for 22 sessions. The level of severity of Mr. Contee's depression was such that it was deemed appropriate for him to be treated simultaneously by several providers, including psychiatrist Louis Littman, MD, PhD.

Mr. Contee's depression has severely interfered with his sleep-wake cycle, his level of energy, his ability to concentrate, and his general wellness, to the point of hindering his academic performance, in spite of his best efforts. He has also experienced suicidal ideation, which we monitor and address regularly. Mr. Contee continues to participate actively in treatment, and he continues to invest himself in his doctoral program. I am supporting his efforts to secure further accommodations for his psychological condition, so that he can be supported in his endeavor to continue in his graduate program.

Thank you for your consideration. Mr. Contee has given me permission to disclose his treatment status via this letter (and other communications should they arise, pending his further consent).

Sincerely,

Cory F. Newman, Ph.D.
Director, Center for Cognitive Therapy
Professor of Psychology, in Psychiatry
University of Pennsylvania, Perelman School of Medicine

3535 Market Street | 2nd Floor | Philadelphia, PA 19104-3309 | 215.898.4100 | Fax: 215.898.1865 | psydoc@mail.med.upenn.edu

pennmedicine

# EXHIBIT D


Penn
Arts & Sciences

Clay Contee <csnowmc@sas.upenn.edu>

## Status of your request
1 message

**Burton-Grika, Lisa <lburt@upenn.edu>**                         Tue, Sep 25, 2018 at 2:53 PM
To: "Contee, Clay Snowden Miranda" <csnowmc@sas.upenn.edu>

Dear Clay,

Thank you for taking the time to meet with us and complete the accommodations request process in SDS. Penn is committed to providing equal access to qualified students with documented disabilities in accordance with University policy and federal, state and local statutes and regulations. I am writing to inform you that the SDS documentation committee has reviewed your submitted information and approved you for the following accommodation:

- 100% extended time for in-class exams and quizzes

Our professional staff members, Pam Balkovec, Jamie Slonim, Susan Shapiro or I will be happy to meet with you to finalize your accommodation and inform your designated professors. Please arrange an appointment to meet with one of us soon.

If you have any questions, you can reach me at 215.573.9235 or Lburt@upenn.edu .

Sincerely,

Lisa

**Lisa Burton-Grika, MS Ed**

Associate Director, Student Disabilities Services

Weingarten Learning Resources Center

University of Pennsylvania

Stouffer Commons – Suite 300

3702 Spruce Street

Philadelphia, PA  19104

215.573.9235 *voice*

215.746.6320 *TTY*

215.746.6326 *fax*

lburt@upenn.edu *(email)*

www.vpul.upenn.edu/lrc/sds *(website)*

*Please consider the environment before printing this email.*

Note: This message and any attached files might contain confidential information protected by federal and state law. The information is intended only for the use of the individual(s) or entities originally named as addressees. If this message reached you in error, please contact the sender and destroy this message. Disclosing, copying, forwarding, or distributing the information by unauthorized individuals or entities is strictly prohibited by law, and may be subject to civil or criminal penalties.

School of Arts & Sciences Mail – re: CAPS                                    8/3/20, 9:38 PM

 **Penn**
Arts & Sciences

Clay Contee <csnowmc@sas.upenn.edu>

## re: CAPS
2 messages

**Clay Contee** <csnowmc@sas.upenn.edu>                        Fri, Oct 5, 2018 at 2:56 PM
To: Josh Klein <jrk@hep.upenn.edu>

Dear Josh,
Thank you for your concern, which was expressed to me via an email from a CAPS affiliate. I am taking steps to
problem solve.
Sincerely,
Clay

**Josh Klein** <jrk@hep.upenn.edu>                             Fri, Oct 5, 2018 at 3:19 PM
To: Clay Contee <csnowmc@sas.upenn.edu>

Clay,
Thanks for letting me know. I am happy to chat with you whenever you're available.

Josh
[Quoted text hidden]

# EXHIBIT E



Penn
Arts & Sciences

Department of Physics and Astronomy
4N18 David Rittenhouse Laboratory
Philadelphia, PA 19104-6396
215.573.3599 or Fax:215.898.8512
email: jrk@hep.upenn.edu

January 7, 2019
Joshua R. Klein
*Edmund J. and Louise W. Kahn*
*Endowed Term Professor*
*of Physics and Astronomy*
*and Graduate Chair*

Clay Contee
Department of Physics and Astronomy
University of Pennsylvania

Dear Mr. Contee:

As we discussed earlier in the Fall semester, when a student's academic performance is below the minimal standards of the University or the Department of Physics and Astronomy, they receive a letter informing them that they are at risk of no longer being in good academic standing. The relevant standards set by the Department are that a student must receive at least a B+ in core courses, and not get below a B+ in any course more than once. You can find this information in the P&A Graduate Handbook at

http://www.physics.upenn.edu/graduate/current-students.

In addition, the relevant standards set by the Vice Provost for Education of the University of Pennsylvania require that for a student to remain in the graduate program, the student's annual GPA must be no less than a 3.0. You can find this information at

https://catalog.upenn.edu/graduate/policies-procedures/academic-withdrawal/

Unfortunately, your current GPA, at the end of the Fall semester, is a 1.67. With a GPA this low, it is mathematically not possible for you to have an annual GPA of 3.0 at the end of the Spring semester. I know that this is difficult news for you to receive, and I am sorry to be the bearer of it.

In Physics and Astronomy we support all first-year students through May 31 of their first year, and you can therefore return in the Spring and continue your coursework and be supported, but I unfortunately do not see a path that gets you into good academic standing and which would allow you to remain in the program beyond May 31.

I would be happy to discuss this with you further, as well as your options for what you could do once you leave Penn.

Sincerely,

*Joshua Klein*

Joshua R. Klein
Professor

# EXHIBIT F



**Penn**
**Arts & Sciences**

Department of Physics and Astronomy
4N18 David Rittenhouse Laboratory
Philadelphia, PA 19104-6396
215.573.3599 or Fax:215.898.8512
email: jrk@hep.upenn.edu

February 25, 2019
Joshua R. Klein
*Edmund J. and Louise W. Kahn*
*Endowed Term Professor*
*of Physics and Astronomy*
*and Graduate Chair*

Clay Contee
Department of Physics and Astronomy
University of Pennsylvania

Dear Mr. Contee:

As we discussed earlier this semester, your performance in your classes in Fall 2018 were such that it is not possible for you to have a B average or better across all of your courses by the end of this academic year. The Vice Provost for Education states that in such cases, you are no longer in good academic standing and that you are placed on academic probation with a timeline for improving your standing. You can find this information at

https://catalog.upenn.edu/graduate/policies-procedures/academic-withdrawal/

As we discussed, the requirements and timeline for you to return to good academic standing are:

- You must achieve a GPA in Spring 2019 of 3.67 or better.

- You must find an advisor willing to fund you to do dissertation research beginning July 1, 2019.

- You must achieve a GPA in Fall 2019 of 3.67 or better.

- You must not get below a B+ more than once in any one of your core courses.

- You must maintain the requisite number of class credits each semester, as stated in the P&A Graduate Handbook.

- You must continue to make progress in research toward eventual candidacy, as determined by your advisor.

I would be happy to discuss this with you further, and to help you in finding an advisor.

Sincerely,

Joshua Klein

Joshua R. Klein
Professor

# EXHIBIT G

 **Penn**
Arts & Sciences                                                    Clay Contee <csnowmc@sas.upenn.edu>

## Failing Out of Penn
5 messages

**Clay Contee** <csnowmc@sas.upenn.edu>                          Fri, Mar 29, 2019 at 5:16 PM
To: sesmith@upenn.edu

Dear Sharon Smith,

You may recall meeting me last August. I had originally reached out to SIS because I was
worried about not being able to find funding to pursue my desired course of study. That meeting
turned into a discussion about how I might increase my chances of a successful first year at
Penn as a first generation, low income, underrepresented racial minority student in grad school.
I remember being very grateful for the time that you took to meet with me and understand my
issues.

Unfortunately, my situation has deteriorated drastically. For reasons which I can go into more
later, I failed all my courses in my first semester. This resulted in a letter from the graduate chair
of the Physics department, Professor Joshua Klein, informing me that I was to leave at the end
of the academic year.

Weeks after receipt of this letter, I arranged a meeting with Professor Klein and the Associate
Ombuds, Marcia Martinez-Helfman, in which I argued my case for a probationary period. I
explained why I thought that my poor grades were not reflective of my academic aptitude. I also
cited the university's policy regarding academic standing as outlined by the Vice Provost for
Education, which suggests that such a probationary period is guaranteed to all students. After
this meeting, Professor Klein agreed to a probationary period, and since then I have been
working very hard to improve my GPA. Although I have made great strides over these last
couple months; nonetheless, I worry that the terms of the probation are unreasonably strict,
especially given my personal circumstances, which I can also go into more later.

Moreover, the concern about funding is still very much present. The physics department
provides funding for only the first academic year, after which point all PhD students are required
to have found a faculty sponsor to fund their education for the remainder of their time at Penn.
As a student on probation, it has been exceedingly difficult to get faculty to even agree to meet
with me, much less invest money in me. If I am unable to find a faculty sponsor in the next
couple of months, the effect is the same as failing out of school.

In a recent meeting with Professor Klein, he suggested that there may be the possibility of a TA-
ship this summer if my grades are within the threshold he has set. We also discussed strategies
for finding a faculty sponsor. This was the first positive meeting I have had in a while, and it
makes me hopeful that things will turn around.

That said, I have been under a great deal of pressure for some time now, and the hardship is

taking a toll on my health. As I look around at peers who seem to encounter none of the same difficulties, I wonder whether I am being given the best possible chance at success, according to the guidelines set by the university. I do not know whether there exist any policies or programs in place to provide support for students in my situation. But if there is more that I can do in terms of self-advocacy, I would really appreciate knowing about it. Hence, I am reaching out to see if you might consider meeting with me to discuss this further.

I hope to hear back from you soon.

Sincerely,
Clay Contee

---

Rudick, Lauren <rudickl@upenn.edu>                          Mon, Apr 8, 2019 at 10:52 AM
To: "Contee, Clay Snowden Miranda" <csnowmc@sas.upenn.edu>
Cc: "Smith, Sharon" <sesmith@upenn.edu>, "Mastroieni, Anita" <mastroie@upenn.edu>

Dear Clay,

Sharon shared your e-mail with me. You may remember that we met with you together in the fall. I'm sorry to hear you've had such a difficult time at Penn since then.

I'm glad you have had ongoing conversations with Professor Klein because he is the best person to advise you on how to succeed in the Ph.D. program in physics. I also want to make sure you are aware of the Weingarten Learning Resources Center, which supports students academically in various ways. Within the Weingarten Center, the Office of Learning Resources helps students with academic learning skills and has two learning instructors who specialize in science and engineering. You can request an appointment with one of them by calling 215-573-9235.

I wish you the best in completing your spring courses and meeting your academic goals.

Best,

Lauren

*****

Lauren Rudick, M.S.Ed.

Director, Student Intervention Services

Office of the Vice Provost for University Life

School of Arts & Sciences Mail – Falling Out of Penn                                                    8/3/20, 9:19 PM

University of Pennsylvania, 3611 Locust Walk

215-898-6081 | rudickl@upenn.edu

_____

[Quoted text hidden]

_____

**Clay Contee** <csnowmc@sas.upenn.edu>                                          Tue, Apr 9, 2019 at 8:48 AM
To: "Rudick, Lauren" <rudickl@upenn.edu>
Cc: "Smith, Sharon" <sesmith@upenn.edu>, "Mastroleni, Anita" <mastrole@upenn.edu>

Dear Lauren Rudick,

I'm attaching letters I would have brought to a meeting if I had gotten a chance to meet with
Sharon Smith as this represents the most pertinent information at present. It's part of looking to
the Office of the Vice Provost of University Life for a second opinion about further
accommodations I can receive as a Penn student. Your timely response is greatly appreciated
in light of the fact that the semester is drawing to a close.

In reading the Pennbook and the Physics and Astronomy Handbook it seems that grades
earned in undergraduate courses are not explicitly separate and therefore could be used as part
of my calculated GPA.

I have studied the policy on academic standing, and I believe there is ample time to solve this
problem and room for coming up with a solution to remain at Penn. Your help and guidance
would be greatly appreciated.

Sincerely,
Clay Contee
[Quoted text hidden]

_____

2 attachments

Newman_let.pdf
238K

Littman_let.pdf
1026K

_____

**Mastroleni, Anita** <mastrole@upenn.edu>                                        Wed, Apr 10, 2019 at 9:46 AM
To: "Contee, Clay Snowden Miranda" <csnowmc@sas.upenn.edu>
Cc: "Smith, Sharon" <sesmith@upenn.edu>, "Rudick, Lauren" <rudickl@upenn.edu>

Clay, thanks for reaching out. I am meeting with Lauren and Sharon today, and one of us will get back to you ASAP. --
Anita

_____

https://mail.google.com/mail/u/0?ik=f0b966ace2&view=pt&search=...msg-f%3A1630435011270772363&simpl=msg-f%3A1630524790096210758          Page 3 of 5

8/3/20, 9:19 PM

Anita Mastroieni, Ed.D.
*Executive Director for Graduate Education & Initiatives*
*122 College Hall*
*University of Pennsylvania*
*tel: 215-898-1842*
*e-mail: mastroie@upenn.edu*



[Quoted text hidden]

---

Rudick, Lauren <rudickl@upenn.edu>                              Thu, Apr 11, 2019 at 9:33 AM
To: "Mastroieni, Anita" <mastroie@upenn.edu>, "Contee, Clay Snowden Miranda" <csnowmc@sas.upenn.edu>
Cc: "Smith, Sharon" <sesmith@upenn.edu>

Dear Clay,

Thank you for sharing the letters from your treatment providers. If you would like your department to know that you a
dealing with a health issue, I can forward the letters to CAPS (Counseling and Psychological Services), which is the
appropriate office to receive documentation from mental-health providers and advise the schools as appropriate.
Please let me know if you would like me to do that.

If you believe that you need academic accommodations because of a disability (which can include mental-health
conditions), Student Disabilities Services (SDS) is the office to go to. SDS is part of the Weingarten Learning
Resources Center, which is located in Stouffer Commons and can be reached at 215-573-9235. If you believe you
need accommodations, it is important to contact SDS as soon as possible because accommodations cannot be
applied retroactively to work that is already completed.

I also want to let you know that if you believe your health is preventing you from successfully completing your
academic work, you have the option to request a leave of absence for medical reasons. If you are interested in that
option, you should talk with Professor Klein as soon as possible.

I hope this information helps. Good luck.

Best,

Lauren

Lauren Rudick, M.S.Ed.
Director, Student Intervention Services

Office of the Vice Provost for University Life

University of Pennsylvania, 3611 Locust Walk

215-898-6081 | rudicki@upenn.edu

[Quoted text hidden]

School of Arts & Sciences Mall – medical leave                                          5/10/20, 9:27 PM



Clay Contee <csnowmc@sas.upenn.edu>

## medical leave
5 messages

**Clay Contee** <csnowmc@sas.upenn.edu>                              Wed, Apr 17, 2019 at 8:17 PM
To: Josh Klein <jrk@hep.upenn.edu>

Dear Professor Klein,

In spite of my best efforts this semester, my grades are not on a trajectory that will earn me the 3.67 GPA that served as a target for my being able to complete my first year of graduate school successfully. My clinical depression has been and continues to be a significant hindrance to my ability to perform up to the expected level.

If I take a medical leave how will I re-enter the physics PhD program? Will I still have access to funding?

At your earliest convenience could you please let me know your thoughts on this matter, which has great importance to me. I appreciate your consideration.

Sincerely,

Clay Contee

**Josh Klein** <jrk@hep.upenn.edu>                                 Wed, Apr 17, 2019 at 10:56 PM
To: Clay Contee <csnowmc@sas.upenn.edu>
Cc: Josh Klein <jrk@hep.upenn.edu>

Hi, Clay,
   I am very sorry to hear this. Are you sure that your GPA will be that low? It is worth chatting with your instructors about where they think you are, if you haven't already.

   There is a place on the Vice Provost's web site that discusses re-integration into a graduate program after returning from leave.  It is worth looking at that, and I will also take a look to remind myself of the details. Bear in mind that different schools and departments do things differently.

   So that being said, as far as our department is concerned, you would be taking a leave at a complicated time, because you do not yet have an advisor, nor are you doing it in your first semester (which would mean you would be guaranteed a second semester of funding).  I think what we would do is that when you decided to return you and the Grad Chair (which might not be me) would have to discuss a funding model. My recommendation to that Grad Chair would be that you were given support for an additional semester (beyond the two you have been funded for) in order to find an advisor who will fund you beyond that time. I would include such a recommendation in a formal letter to you, that you could then bring to the Grad Chair when you were planning on returning.

   I'd be happy to talk to you about this in person.

                    Josh
[Quoted text hidden]

https://mail.google.com/mail/u/0?ik=f0b966ace2&view=pt&search=...=msg-f%3A1631286789298303751&simpl=msg-f%3A1631892472376721964        Page 1 of 2

---

**Clay Contee** <csnowmc@sas.upenn.edu>
To: Josh Klein <jrk@hep.upenn.edu>

Fri, Apr 19, 2019 at 12:03 PM

Dear Professor Klein,
Thanks for getting back to me.
Is there a time on Wednesday (4/24) that would work for us to meet and talk about it?
Best,
-Clay Contee
[Quoted text hidden]

---

**Josh Klein** <jrk@hep.upenn.edu>
To: Clay Contee <csnowmc@sas.upenn.edu>
Cc: Josh Klein <jrk@hep.upenn.edu>

Fri, Apr 19, 2019 at 2:07 PM

Clay,
I can do 1pm on Wednesday.

Josh
[Quoted text hidden]

---

**Josh Klein** <jrk@hep.upenn.edu>
To: Clay Contee <csnowmc@sas.upenn.edu>
Cc: Josh Klein <jrk@hep.upenn.edu>

Fri, Apr 26, 2019 at 11:52 AM

Clay,
I will need a written request from you for the medical leave, which will then have to also be approved by the Dean.  Please write something up that has that request.  I will speak to your doctors today.

Josh

# EXHIBIT H

**Penn**
**Arts & Sciences**

Department of Physics and Astronomy
4N18 David Rittenhouse Laboratory
Philadelphia, PA 19104-6396
215.573.3599 or Fax:215.898.8512
email: jrk@hep.upenn.edu

May 31, 2019
Joshua R. Klein
*Edmund J. and Louise W. Kahn*
*Endowed Term Professor*
*of Physics and Astronomy*
*and Graduate Chair*

Clay Contee
Department of Physics and Astronomy
University of Pennsylvania

Dear Mr. Contee:

As we discussed a few weeks ago, your performance in your classes in Spring 2019 is such that your cumulative GPA of 2.2 for this year places you below the University's threshold of 3.0. You are now, therefore, no longer in academic good standing and are on academic probation.

In my letter dated February 25, I pointed out that in this event you would be given an additional semester to raise your GPA above the University-mandated level of 3.0. At the time, we had agreed that this would be achieved by getting a 3.67 or better in both Spring 2019 and Fall 2019. Your 3.0 this semester should therefore mean you have missed this mark. Nevertheless, I have decided that because it is still mathematically possible for you to bring your cumulative GPA above a 3.0 by the end of Fall 2019, that you may attempt to do so, as long as you fulfill other necessary requirements to re-enter into academic good standing. These items are listed explicitly below:

- You must complete and receive an A in your incomplete Optics class, Physics 529.

- You must re-take your failed core class from Fall 2019, Quantum I (Physics 531). Please note that if you do not receive better than a B+ in P531 (thus failing it twice) then, irrespective of any other requirements below, you cannot remain in the program.

- You must maintain the requisite number of class credits in Fall 2019 and any subsequent semesters, as stated in the P&A Graduate Handbook.

- You must achieve a GPA in Fall 2019 of 4.0. With this GPA, and your A in Physics 529, you will at this point have a cumulative GPA of 3.0.

- You must find an advisor who can fund you to do research aimed at an eventual dissertation project, beginning in Fall 2019.

There can be no exceptions to these criteria. To help you during this summer, while you are searching for an advisor, you can work as a Teaching Assistant which will provide funding support. That support will end in August when your TA duties end.

I would be happy to discuss this with you further. Information on how to go about finding an advisor in P&A can be found in the P&A Graduate Handbook.

Sincerely,

Joshua R. Klein
Professor

# EXHIBIT I



Penn
Arts & Sciences

Department of Physics and Astronomy
4N18 David Rittenhouse Laboratory
Philadelphia, PA 19104-6396
215.573.3599 or Fax:215.898.8512
email: jrk@hep.upenn.edu

January 2, 2020
Joshua R. Klein
*Edmund J. and Louise W. Kahn*
*Endowed Term Professor*
*of Physics and Astronomy*
*and Graduate Chair*

Clay Contee
Department of Physics and Astronomy
University of Pennsylvania

Dear Mr. Contee:

As you know, in my letter dated May 31, 2019, I outlined the steps you needed to take, and the necessary milestones you needed to pass, in order to return to good academic standing in our Physics and Astronomy Program here at Penn. These items were:

- You must complete and receive an A in your incomplete Optics class, Physics 529.

- You must re-take your failed core class from Fall 2019, Quantum I (Physics 531). Please note that if you do not receive better than a B+ in P531 (thus failing it twice) then, irrespective of any other requirements below, you cannot remain in the program.

- You must maintain the requisite number of class credits in Fall 2019 and any subsequent semesters, as stated in the P&A Graduate Handbook.

- You must achieve a GPA in Fall 2019 of 4.0. With this GPA, and your A in Physics 529, you will at this point have a cumulative GPA of 3.0.

- You must find an advisor who can fund you to do research aimed at an eventual dissertation project, beginning in Fall 2019.

Despite an exceptional effort on the part of our faculty and staff here in the Department of Physics and Astronomy, which included extra individualized help and tutoring, and financial support for you in the Summer of 2019, and extraordinary patience on the part of the entire Department including the Graduate Chair, this semester you received a B in Quantum I (Physics 531), and a semester GPA of 3.23 which gives you a cumulative GPA of 2.66. I am very sorry, therefore, to say that in accordance with the requirements for degree achievement in Physics and Astronomy, which you can find here

http://www.physics.upenn.edu/graduate/degree-requirements

(and in the Physics and Astronomy Graduate Handbook), and the Vice Provost for Education's rules regarding GPA and good academic standing, which you can find here

http://catalog.upenn.edu/graduate/policies-procedures/academic-withdrawal/

you can not remain in the graduate program in Physics and Astronomy at the University of Pennsylvania. I know this is a difficult thing for you, and I am sorry to be the bearer of unfortunate news. I wish you the best of luck in your future endeavors.

Sincerely,

Joshua R. Klein
Professor