# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLAY CONTEE, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF PENNSYLVANIA, | : | No. 21-1398 |
|     Defendant. | : | |
| | : | |

## MEMORANDUM

**Schiller, J.**                                                                                                                                     **June 29, 2021**

Plaintiff Clay Contee has alleged Defendant University of Pennsylvania (Penn) discriminated and retaliated against him because of his disability, which resulted in his wrongful termination from a graduate program. Before the Court is the University of Pennsylvania's[1] motion to dismiss Plaintiff's Complaint for failure to state a claim. Penn argues it had no employer/employee relationship with Contee, and therefore, he cannot sustain a claim of discrimination in violation of Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*. The Court finds Contee has plausibly stated a claim for violation of either Title I or Title III of the ADA.

## I.     FACTUAL BACKGROUND

Contee was accepted as a student in Penn's graduate program in the Department of Physics and Astronomy in January 2018. (Compl. ¶ 16.) Contee began working for Penn and receiving payments in June 2018. (*Id*. ¶ 17.) He began taking courses in September 2018. (*Id*. ¶ 23.) Contee suffers from several mental health disabilities, including major depressive disorder and anxiety. (*Id*. ¶ 18.) Contee consulted with Penn's Counseling and Psychological Services ("CAPS")

---

[1] The Complaint names the University of Pennsylvania as Defendant, but Defendant's motion identifies the proper Defendant as The Trustees of the University of Pennsylvania.

beginning in the summer of 2018, and he had monthly check-ins with a case manager and social worker from CAPS throughout his first year in the program. (*Id*. ¶¶ 20-21.)

Contee finished his first semester of classes in December 2018 with a grade point average (GPA) of 1.67. (Compl. ¶ 25.) Due to his low GPA, he was placed on academic probation and had to meet minimum GPA requirements for the next year. (*Id*. ¶¶ 26-29.) In March 2019, Contee was concerned that his disabilities would impede his capacity to meet the required academic thresholds for the spring semester. (*Id*. ¶ 30.) He contacted Penn's Office of University Life about his concern, and a representative suggested he could apply for medical leave. (*Id*. ¶¶ 30-31; Compl. Ex. G.) Contee contacted Professor Joshua Klein about applying for medical leave and proposed a leave of approximately three weeks, so that he could still participate as a summer teaching assistant. (Compl. ¶ 33.) Contee asserts that Klein questioned his need to take medical leave, accused Contee of acting in bad faith, and threatened to refuse to extend his departmental funding if he took medical leave and missed his spring 2019 final exams. (*Id*.) Fearing retaliation, Contee did not take medical leave and sat for his spring 2019 final exams as scheduled. (*Id*. ¶ 34.) He performed below the required academic thresholds. (*Id*. ¶ 36.) However, Penn permitted Contee to continue in the graduate student program for the summer and fall of 2019 because if he achieved a 4.0 GPA in the fall semester, he could still meet his academic thresholds for the year. (*Id*. ¶ 37; Compl. Ex. H.) In the fall 2019 semester, Contee fell short of the probationary academic requirements. (Compl. ¶ 38.) Penn dismissed Plaintiff from the graduate program in January 2020 because his cumulative GPA was below the required threshold, and he received a low grade in a core class in the fall 2019 semester. (*Id*.; Compl. Ex. I.)

Contee filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on October 28, 2020. (Compl. ¶ 12.) The EEOC issued a Dismissal and

Notice of Rights letter on December 30, 2020, which stated that there was "[n]o jurisdiction" and "[n]o employee/employer relationship." (*Id.* ¶ 13; Compl. Ex. A.) Contee also filed a complaint with the Department of Education's Office of Civil Rights, which denied his appeal on February 23, 2021. (Compl. ¶ 14; Compl. Ex. B.)

## II.  STANDARD OF REVIEW

On a motion to dismiss, the court must first separate the factual and legal elements of a claim and "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint must contain "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Thus, the court must "construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Id.* at 230.

## III.  DISCUSSION

Plaintiff asserts two counts of discrimination and retaliation in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* The Complaint does not specify whether

it seeks relief for discrimination under Title I or Title III of the ADA. Title I prohibits discrimination on the basis of disability by an "employer" in regard to, *inter alia*, "discharge of employees…and other terms, conditions, and privileges of employment." 42 U.S.C. §§ 12111(2), 12112(a). Title III prohibits disability discrimination in public accommodations, which includes a "postgraduate private school, or other place of education[.]" 42 U.S.C. §§ 12181(7)(J), 12182. A plaintiff must exhaust administrative remedies before the EEOC in order to bring a Title I claim, but a Title III claim does not require administrative exhaustion. *McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138-39 (2d Cir. 2007).

Title IV of the ADA prohibits retaliation against anyone for asserting rights under the ADA and makes it unlawful to coerce, intimidate, threaten, or interfere with anyone exercising his or her rights under the statute. 42 U.S.C. § 12203(a)-(b). The remedies available for a retaliation claim depend on the context. 42 U.S.C. § 12203(c). "[A] plaintiff bringing an ADA retaliation claim involving employment will have the remedies of Title I of the ADA, which incorporates the remedies of Title VII [of the Civil Rights Act], but a plaintiff bringing a retaliation claim involving public accommodations will have the remedies of Title III of the ADA, incorporating the remedies of Title II of the Civil Rights Act." *Datto v. Harrison*, 664 F. Supp. 2d 472, 487 (E.D. Pa. 2009).

Although the Complaint does not specify whether it seeks relief for discrimination under Title I or Title III of the ADA, it contains indicia of a Title I claim. Plaintiff states that he filed a charge with the EEOC and has "exhausted his administrative remedies, as required under federal and state law." (Compl. ¶¶ 11-12.) Plaintiff also seeks damages, which are not an available remedy for private enforcement of a Title III violation. *See* 42 U.S.C. § 12188(a); *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 342 (8th Cir. 2006). In opposition to the motion to dismiss, Plaintiff argues he has plausibly pleaded that he was an employee of Penn within the meaning of

4

Title I. Meanwhile, Penn argues the Complaint should be dismissed with prejudice because Contee has not alleged any employee relationship with Penn.

As a threshold matter, Penn argues that the Court should defer to the EEOC's determination, set forth in the Notice of Dismissal, that it had no jurisdiction because there was no employee/employer relationship. Penn relies on *Air Courier Conference of America/International Committee v. U.S. Postal Service*, in which the Third Circuit acknowledged that an agency's reasonable interpretation of its own statutory jurisdiction may be entitled to deference. 959 F.2d 1213, 1223 (3d Cir. 1992) (citing *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 844 (1986)). Unlike in *Schor*, the Court is not being asked to adjudicate whether an agency's assessment of its own jurisdiction was reasonable. Contee has not challenged the EEOC's determination that it did not have jurisdiction to pursue a claim on his behalf. Instead, he has brought a claim for disability discrimination, which this Court must review *de novo*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798-99 (1973). This review includes an independent assessment of whether Contee's relationship with Penn is plausibly that of employee/employer because Title I applies only to employment discrimination.

The issue before the Court is whether Contee has alleged an employee/employer relationship given Contee's role as a graduate student. Penn has presented no EEOC regulation or section of the EEOC Compliance Manual interpreting the meaning of the term "employee" that it argues should be afforded deference. As a result, the Court has no means of assessing what level of deference might be appropriate. *Compare Clackamas Gastroenterology Assocs., P. C. v. Wells*, 538 U.S. 440, 449 n.9 (2003) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)) (EEOC Compliance Manual is not controlling but is a "body of experience and informed judgment" to which the Court may resort for guidance), *and Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103,

114-15 (3d Cir. 2003) (applying *Skidmore* deference to EEOC regulations concerning procedure for notice of right to sue but declining to defer to the EEOC Compliance Manual), *with Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 143 n.4 (3d Cir. 1998) (EEOC regulations implemented pursuant to 42 U.S.C. § 12116 "are entitled to substantial deference."). At the pleadings stage, the Court has no ability to assess whether the EEOC's determination that Contee was not an employee was based upon a reasonable interpretation of the meaning of "employee" in the ADA, so the Court will not defer to this determination in deciding Defendant's motion to dismiss.

The ADA defines "employee" in an entirely circular fashion: "'employee' means an individual employed by an employer" and "'employer' means a person engaged in an industry affecting commerce who has 15 or more employees…." 42 U.S.C. § 12111(4), (5)(A). The Supreme Court has instructed that "when Congress has used the term 'employee' without defining it," the Court has interpreted this term to embody the "relationship as understood by common-law agency doctrine." *Clackamas*, 538 U.S. at 445 (2003) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992)). At common law, the relevant factors defining the employer/employee relationship focused on the employer's right to control the employee's work. *See id.* at 448 (citing Restatement (Second) of Agency § 2(2) (1957)). Thus, in *Clackamas*, "the common-law element of control" was "the principal guidepost" the Supreme Court followed to interpret the meaning of employee in the ADA as it pertained to physician-shareholders of a professional corporation. *Id.* Courts in this district have likewise focused on common-law control when interpreting whether a plaintiff is an employee rather than an independent contractor. *See Hicks v. Brown Fam. Shoprite Inc. of Cheltenham*, Civ. A. No. 08-5830, 2009 WL 3055393, at *1-2 (E.D. Pa. Sept. 24, 2009); *Cameron v. Infoconsulting Int'l, LLC*, Civ. A. No. 04-4365, 2006 WL 1450842, at *5-7 (E.D. Pa. May 23, 2006). To determine whether a graduate student is a

statutory employee under the ADA or Title VII of the Civil Rights Act—which has a similarly circular definition of employee—courts have assessed the university's right to control the graduate student or the economic realities of the relationship.[2] *See, e.g.*, *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004); *Ruiz v. Trustees of Purdue Univ.*, Civ. A. No. 06-130, 2008 WL 833125, at *9-11 (N.D. Ind. Feb. 20, 2008), report and recommendation adopted, 2008 WL 833130 (N.D. Ind. Mar. 26, 2008); *Ivan v. Kent State Univ.*, 863 F. Supp. 581, 585-86 (N.D. Ohio 1994), *aff'd*, 92 F.3d 1185 (6th Cir. 1996). In light of the Supreme Court's reasoning in *Clackamas*, 538 U.S. at 448, the Court concludes that common-law agency doctrine, and particularly the right to control, should guide its determination of whether Plaintiff has plausibly alleged he was an employee under the ADA.

"[T]he precise contours of an employment relationship can only be established by a careful factual inquiry." *Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997). Therefore, whether a plaintiff is an employee is a fact-intensive inquiry that can rarely be resolved on a motion to dismiss. *See Brown v. Bank of Am., N.A.*, 5 F. Supp. 3d 121, 135 (D. Me. 2014). For example, in order to assess a university's control over a graduate student asserting Title VII and ADA claims, the court in *Ruiz v. Trustees of Purdue University* reviewed the Graduate Student Employment Manual, plaintiff's employment verification letter, and an affidavit of the university's Associate Dean. 2008 WL 833125, at *9-11. Likewise, in *The Trustees of Columbia University in the City of New York & Graduate Workers of Columbia-GWC*—a case on which Plaintiff relies—the

---

[2] Prior to the Supreme Court's decision in *Clackamas*, there had been a divide among the circuits as to whether an "economic realities" test was the appropriate standard for assessing employee status. *See Clackamas*, 538 U.S. at 444; *see also E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32, 37-38 (3d Cir. 1983) (employing a hybrid standard of the economic realities test and common-law right to control). In *Clackamas*, the Supreme Court clarified that the common-law "right to control" test should determine employment status under the ADA. 538 U.S. at 448.

National Labor Relations Board (NLRB) determined that graduate teaching and research assistants at Columbia University were statutory employees under the National Labor Relations Act based upon an inquiry into common-law agency principles. 364 NLRB No. 90, 2016 WL 4437684, at *1-2, 6 (N.L.R.B. Aug. 23, 2016). The NLRB analyzed Columbia's right to control the graduate assistants' work through a review of the structure and conditions of the graduate assistants' payment, as well as the university's direction of the graduate students' teaching and research activities and benefits to the university. *See id.* at *17-21. While this case is not controlling, the Court finds the NLRB's fact-intensive mode of analyzing common-law employment persuasive.

Here, Plaintiff alleges that he worked for Penn and received payments. (Compl. ¶ 17.)[3] He further alleges that as a result of his termination from the graduate program, he lost his stipend from Defendant, which was his primary source of income. (Compl. ¶ 46.) At the motion to dismiss stage, Plaintiff has pleaded facts sufficient to plausibly allege an employment relationship for the purpose of a Title I claim. Of course, the Court expresses no opinion as to whether Plaintiff will ultimately succeed in proving that he was an employee under the ADA. The Court merely concludes that Plaintiff's relationship with Penn is "sufficiently ambiguous" to plausibly allege employment discrimination. *Graves*, 117 F.3d at 729.

In its Reply, Penn argues that even if Plaintiff has plausibly alleged he is an employee, the Complaint still fails to state a Title I claim because Plaintiff's allegations relate entirely to his academic coursework and Penn's obligations to him as a student, rather than as an employee. Some courts have concluded that a graduate student cannot state a claim for employment discrimination if the alleged discriminatory or retaliatory conduct was only related to a student's academic

---

[3] In opposition to the motion to dismiss, Plaintiff submits additional evidence of his employment. The Court will not consider these submissions in deciding the motion because they were not referenced in or attached to the Complaint. *See Mayer*, 605 F.3d at 230.

activities. *See*, *e.g.*, *Bakhtiari v. Lutz*, 507 F.3d 1132, 1137-38 (8th Cir. 2007); *Seaton v. Univ. of Pa.*, Civ. A. No. 01-2037, 2001 WL 1526282, at *8 (E.D. Pa. Nov. 30, 2001); *Bucklen v. Rensselaer Polytechnic Inst.*, 166 F. Supp. 2d 721, 725 (N.D.N.Y. 2001); *cf. Stilley v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*, 968 F. Supp. 252, 261 (W.D. Pa. 1996) (refusing to consider Title VII retaliation allegations regarding plaintiff's dissertation since it related to plaintiff's role as a student). Here, Plaintiff's termination from the graduate program was due to his academic performance (Compl. ¶ 38; Compl. Ex. I), but the Court is not persuaded that this necessarily forecloses his ability to bring a Title I claim. Title I prohibits discrimination on the basis of disability in the terms, conditions, or privileges of employment, which includes failure to make reasonable accommodations. *See* 42 U.S.C. § 12112(a), (b)(5)(A). Plaintiff has alleged he was denied a reasonable accommodation for his disability when he sought a short-term medical leave and, in response, Professor Klein threatened to refuse to extend his departmental funding. (Compl. ¶ 33.) This allegation plausibly relates to the conditions of his employment. Therefore, the Court will not dismiss Plaintiff's Complaint for failure to state a Title I claim.

Finally, even if Plaintiff could not state a Title I claim, the Complaint could state a claim against Penn as a public accommodation under Title III. *See* 42 U.S.C. § 12182(b)(2)(A)(ii). However, the Third Circuit has held that Title III of the ADA cannot apply to claims of employment discrimination. *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 122 (3d Cir. 1998). As a result, a plaintiff cannot simultaneously recover under Title I and Title III of the ADA. At this point, Plaintiff has indicated an intent to pursue only a Title I claim, however, the Complaint has, in the alternative, plausibly alleged discrimination by a public accommodation in violation of Title III. *See McInerney*, 505 F.3d at 139 (reversing trial court's dismissal of an ADA claim for

failure to exhaust administrative remedies when facts alleged stated a Title III claim). Thus, Defendant's motion to dismiss must be denied.

## IV. CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss is denied. An appropriate Order will be docketed separately.